# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **MICHEL NGAKOUE,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **CASE NO. 1:22-CV-00363-LY** |
| | § | |
| **SAFECO INSURANCE** | § | |
| **COMPANY OF INDIANA,** | § | |
| *Defendant* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

### TO: THE HONORABLE LEE YEAKEL
### UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion for Summary Judgment, filed September 2, 2022 (Dkt. 5); Plaintiff's Response to Defendant's Motion for Summary Judgment, filed October 7, 2022 (Dkt. 9); and Defendant's Reply to Plaintiff's Response, filed October 14, 2022 (Dkt. 10). On November 8, 2022, the District Court referred the motion and related filings to the undersigned Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 11.

## I.    Background

Plaintiff Michel Ngakoue brings this insurance coverage lawsuit against his insurance company, Defendant Safeco Insurance Company of Indiana, after his property damage claim under his landlord protection insurance policy was denied.[1]

In October 2015, Plaintiff purchased property located at 15407 Connie St., Austin, Texas ("Property"). Plaintiff's First Amended Complaint (Dkt. 4) ¶ 8. Three buildings were located on

---

[1] Plaintiff is a Texas resident, and Defendant is an Indiana resident. Dkt. 4 ¶ 3.

the Property: two dwellings to be rented out as residences and a "main building" that could be used for commercial purposes ("Main Building"). *Id.*; Dkt. 10 at 3. Plaintiff contends that he bought the Property "with the intention of opening numerous rental properties and utilizing the main building as a community center to which the space could be rented out" for "various meetings and parties." Dkt. 9 at 2-3. After buying the Property, Plaintiff alleges, he began using the Main Building "for commercial purposes and not as a residence." Dkt. 4 ¶ 8.

Shortly after buying the Property, Plaintiff purchased a landlord protection insurance policy for the Property, which Defendant underwrote ("Policy"). *Id.* ¶ 7. The Policy provides coverage for certain "accidental direct physical loss" to the "dwelling" and "other structures" on the Property. Dkt. 9-1 at 14, 19. The original policy period was October 19, 2015 to October 19, 2016, "with renewals occurring every year until Plaintiff terminated the policy in June 2021." Dkt. 9 at 3. On August 16, 2020, Plaintiff renewed the Policy to provide continued coverage to the Property for the policy term October 19, 2020 to October 19, 2021. Dkt. 9-1 at 5, 10.

Section A of the Policy provides coverage to "the dwelling on the Described Location shown in the Declarations, used principally for dwelling purposes." *Id.* at 14. Section B provides coverage to "Other Structures" on the Property, including "fences, patios, driveways and walkways," and "other structures on the Described Location, separated from the dwelling by clear space, including other structures connected to the dwelling by only a fence, utility line, plumbing, or similar connection." *Id.* The Policy excludes coverage to other structures "used in whole or in part for commercial, manufacturing or farming purposes." *Id.*

Plaintiff alleges that on February 20, 2021, the Main Building sustained direct physical damage as a result of a severe winter storm, with "extensive interior damage, including walls, ceilings, flooring, and fixtures, due to a storm created rupture in the ceiling." Dkt. 4 ¶ 10; Dkt. 9 at 1-2.

Plaintiff alleges that the damage to the Main Building is approximately $24,326.39. Dkt. 4 ¶ 17. Plaintiff submitted a claim to Defendant under the Policy for the alleged property damage. Plaintiff alleges that Defendant's agent, Kiva Cotham, investigated the claim and performed an inspection of the main building on April 13, 2021. *Id.* ¶ 13. On April 16, 2021, Defendant denied the claim on the basis that it was "unable to identify any hail related damage to your property." Dkt. 9-2 at 2. On June 14, 2021, Plaintiff cancelled the Policy. Dkt. 9-1 at 3.

On March 4, 2022, Plaintiff filed this lawsuit in Travis County District Court, alleging breach of contract, common law bad faith, fraud, d violations of the TDTPA and Sections 541 and 542 of the Texas Insurance Code. *Ngakoue v. Safeco Ins. Co. of Indiana*, Cause No. D-1-GN-22-001095 (261st Dist. Ct. Travis County, Tex. Mar. 4, 2022) (Dkt. 1 at 8-24). Plaintiff also alleged that Defendant "waived and is estopped from asserting any coverage defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights letter to Plaintiff." Dkt. 1 at 20. In its Answer, Defendant argued that there is no coverage under the Policy for the claimed property damage because the Main Building was being used for commercial purposes, and the Policy "specifically excludes coverage for structures used primarily for commercial purposes." *Id.* at 26. On April 4, 2022, Defendant removed this case to federal court on the basis of diversity jurisdiction under 28 U.S.C. §§ 1332, 1441(b)(2). Dkt. 1. On August 23, 2022, Plaintiff filed his First Amended Complaint, asserting the same claims as in his state court petition. Dkt. 4.

Defendant now moves for summary judgment on all of Plaintiff's claims under Federal Rule of Civil Procedure 56(a). Defendant argues that: (1) Plaintiff's breach of contract claim fails because the Policy does not cover the claimed damage to the Main Building, which was used for commercial purposes, excluded under the Policy; and (2) Plaintiff's extra-contractual claims fail because there is no coverage under the Policy. Plaintiff opposes Defendant's motion.

## II.    Legal Standards

### A.  Rule 56(a)

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.*

The party opposing summary judgment must identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). "Rule 56 does not impose upon the district court

a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### B.  Texas Insurance Law

Because this case was removed from Texas state court on diversity jurisdiction, Texas substantive law applies. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938). Under Texas law, insurance policies are written contracts. As with other contracts, courts "interpret and enforce them according to settled rules of construction" and "must give the policy's words their plain meaning, without inserting additional provisions into the contract." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008). Accordingly, courts must begin their analysis with the terms of the policy because they "presume parties intend what the words of their contract say." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). The words of the policy "are given their ordinary and generally-accepted meaning unless the policy shows the words were meant in a technical or different sense." *Id.* All parts of the policy are read together, and courts must give "effect to each word, clause, and sentence, and avoid making any provision within the policy inoperative." *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010).

In insurance coverage disputes, Texas law directs courts to apply a burden-shifting scheme. Initially, the insured has the burden of establishing coverage under the policy. *Gilbert*, 327 S.W.3d at 124. If the insured proves coverage, to avoid liability, the insurer then must prove the loss is within an exclusion. *Id.* If the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim within coverage. *Id.*

### III.    Analysis

As discussed above, Plaintiff alleges that Defendant wrongfully denied and mishandled his insurance claim. He asserts claims for breach of contract, common law bad faith, fraud, violations of the TDTPA and Sections 541 and 542 of the Texas Insurance Code, waiver, and estoppel. The Court addresses each claim in turn.

### A.  Breach of Contract

To plead a claim for breach of an insurance contract, a plaintiff must prove (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result. *Vizza Wash, LP v. Nationwide Mut. Ins. Co.*, 496 F. Supp. 3d 1029, 1038 (W.D. Tex. 2020).

Plaintiff alleges that Defendant breached the Policy by refusing to pay him for the alleged property damage to the Main Building. As noted, the Policy contains a provision excluding coverage to "other structures . . . used in whole or in part for commercial, manufacturing or farming purposes." Dkt. 9-1 at 14. Defendant argues that this "clear and unambiguous" exclusion bars coverage under the Policy because: "It is undisputed that Ngakoue used the structure as an events center for commercial purposes." Dkt. 5 at 5.

Plaintiff admits that he used the Main Building "for commercial purposes and not as a residence." Dkt. 4 ¶ 8.[2] Plaintiff argues that the Court should find that his claim is covered under the Policy nonetheless because (1) the Policy is ambiguous; (2) Defendant waived its right to deny coverage based on the commercial use of the Main Building; and (3) Defendant's Motion for Summary Judgment is premature because the parties have not conducted discovery. All these arguments are meritless.

---

[2] Dkt. 4 ¶ 8; *see also* Dkt. 9 at 3 (acknowledging that Plaintiff uses the Main Building "for commercial purposes").

### 1.   The Commercial Purpose Exclusion Is Not Ambiguous

Plaintiff argues that the commercial purpose exclusion in the Policy is ambiguous because it fails to define "commercial purpose," and thus the Court must interpret the exclusion in favor of coverage. Dkt. 9 at 5. Defendant counters that the exclusion is clear and unambiguous.

"Insurance policies are controlled by rules of interpretation and construction which are applicable to contracts generally." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). The primary concern of a court in construing a written contract, including an insurance policy, is to ascertain the true intent of the parties as expressed in the instrument. *Id.* "If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. If, however, the language of a policy or contract is subject to two or more reasonable interpretations, it is ambiguous." *Id.*

Where an ambiguity involves an exclusionary provision of an insurance policy, a court "must adopt the construction . . . urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998) (citation omitted). But an ambiguity does not exist simply because the parties interpret a policy differently. If a contract as written can be given a clear and definite legal meaning, then it is not ambiguous as a matter of law. *Gilbert*, 327 S.W.3d at 133. "Only where a contract is first determined to be ambiguous may the courts consider the parties' interpretation, and admit extraneous evidence to determine the true meaning of the instrument." *CBI Indus.*, 907 S.W.2d at 520. Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. *Id.*

The Court finds that Plaintiff has not shown that the commercial purposes exclusion is subject to two or more reasonable interpretations and thus not shown that the exclusion is ambiguous. *Id.*

In support of his argument that the exclusion is ambiguous because it fails to define commercial purposes, Plaintiff simply states the following:

> The Oxford dictionary defines commercial as "connected with the buying and selling of goods and services." Plaintiff did not sell physical goods within the disputed space but rented the space for use by members of the surrounding community, drawing similarities to the use of the dwelling units available for rent, as intended under the landlord-tenant policy and purpose of the property, for which Safeco does not dispute any potential coverage issues.

Dkt. 9 at 6. But Plaintiff admits that he used the building for "commercial purposes"[3] and that he "rented the space" for a fee for "meetings and parties."[4] Even under the dictionary definition he offers, Plaintiff admits that he used the Main Building for the "buying and selling" of services. That he did not use the building to sell physical goods is immaterial.

Plaintiff does not dispute that the Policy clearly and unambiguously excludes "other structures" on the Property that are "used in whole or in part" for commercial purposes. Dkt. 9-1 at 14. And Plaintiff admits that he used the Main Building for commercial purposes: renting out the building as an event space in exchange for a fee. Accordingly, the Policy does not provide coverage for the Main Building, and Plaintiff cannot show that Defendant breached the Policy. The fact that the exclusion does not define commercial purpose creates no ambiguity. The exclusion is not ambiguous, and the Court does not interpret it in Plaintiff's favor. *Gilbert*, 327 F.3d at 133.

### 2. Waiver and Estoppel Do Not Create Coverage

Plaintiff next argues that Defendant waived its right to enforce the commercial use exclusion because he has used the Main Building for commercial purposes since 2015, and Defendant learned of that use "[a]t minimum . . . on April 12, 2021," when Defendant inspected the Main

---

[3] Dkt. 4 ¶ 8; Dkt. 9 at 3.

[4] Dkt. 9 at 3.

Building during its investigation of the claim. Dkt. 9 at 3. Plaintiff argues that Defendant should be estopped from relying on the commercial purpose exclusion under the Policy because it did not do so in its initial denial letter on April 16, 2021. Plaintiff also argues that his use of the Main Building "is not material to the risk and is not material to the loss associated with the claim," and that it would be "inherently unfair to allow an insurer to retain an unearned premium while denying coverage." *Id.* at 4.

In support of his waiver and estoppel argument, Plaintiff relies on *Am. Fire & Cas. Co. v. Eastham*, 185 F.2d 729, 730 (5th Cir. 1950). In that case, the plaintiff sued his insurer under a fire insurance policy that insured him against loss by fire on a frame building in Dallas, Texas, which was destroyed by fire on July 12, 1948. The policy contained a forfeiture clause stating that the policy would become void "if the house became vacant for more than thirty consecutive days." *Id.* The insurance company denied plaintiff's claim on that basis. The insured claimed that the insurer had waived the forfeiture clause "by its retention of the premium and its failure to cancel the policy, notwithstanding it had notice of the vacancy long before the fire and continued to have such notice until the time of the fire." *Id.* The Fifth Circuit Court of Appeals agreed that the insurance company had waived its right to forfeit the policy, reasoning that: "It is well settled under Texas law that where the insurer acquires full knowledge of facts sufficient to work a forfeiture of its policy, and does not cancel the policy but retains the unearned premium, it waives the condition and is estopped to claim a forfeiture." *Id.*

Plaintiff's reliance on *Eastham* is misplaced because Defendant does not seek a forfeiture of the Policy, but instead argues that the Policy does not cover one of the three buildings on the Property. Defendant continued to provide insurance coverage to the other two buildings on the

Property until Plaintiff terminated the Policy in June 2021. Thus, unlike in *Eastham*, Plaintiff continued to receive the benefit of his premiums for the other buildings on the Property.

Plaintiff also overlooks Texas Supreme Court precedent holding that:

> The doctrine of estoppel cannot be used to create insurance coverage when none exists by the terms of the policy. Waiver and estoppel may operate to avoid a forfeiture of a policy, but they have consistently been denied operative force to change, re-write and enlarge the risks covered by a policy. In other words, waiver and estoppel cannot create a new and different contract with respect to risks covered by the policy.

*Texas Farmers Ins. Co. v. McGuire*, 744 S.W.2d 601, 603 (Tex. 1988) (cleaned up); *accord Minnesota Mut. Life Ins. Co. v. Morse*, 487 S.W.2d 317, 320 (Tex. 1972):

> Whereas waiver and estoppel may operate to avoid forfeiture of a policy and may prevent an insurance company from avoiding payment because of the failure on the part of the insured to comply with some requirement of the policy, waiver and estoppel cannot enlarge the risks covered by a policy and cannot be used to create a new and different contract with respect to the risk covered and the insurance extended.

Consistent with this precedent, because the Policy excludes coverage for property used for commercial purposes and the Main Building was used for commercial purposes, the doctrines of waiver and estoppel cannot be used to create coverage. *See Royal Maccabees Life Ins. Co. v. James*, 146 S.W.3d 340, 350 (Tex. App.—Dallas 2004, pet. denied) (holding that "acceptance of premiums or other actions by [insurer] that might otherwise indicate waiver of the written approval requirement cannot be used to create coverage").

### 3. Summary Judgment Is Not Premature

Finally, Plaintiff argues that the Court should deny Defendant's Motion for Summary Judgment as premature because the parties have not engaged in discovery.

Under Rule 56(b), "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." The purpose of a motion of a motion for summary judgment

> is not to cut litigants off from their right to trial by jury. On the
> contrary, it is to carefully test this, to separate the mere formal from
> the substantial, to determine what if any issues of fact are present
> for a jury to try, and to enable the court to expeditiously dispose of
> cases by giving judgment on the law where the material facts are not
> in dispute.

*Surkin v. Charteris*, 197 F.2d 77, 79 (5th Cir. 1952). As stated above, summary judgment is

appropriate when "'the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law.'" *United States v. Nature's Way Marine,*

*L.L.C.*, 904 F.3d 416, 419 (5th Cir. 2018) (quoting FED. R. CIV. P. 56(a)). Under Texas law, the

interpretation of an insurance policy is a question of law for a court to determine. *Landmark Am.*

*Ins. Co. v. SCD Mem'l Place II, L.L.C.*, 25 F.4th 283, 285-86 (5th Cir. 2022).

As stated, Plaintiff bears the burden of proof that his claim is covered by the Policy. The Policy

does not cover "other structures" on the Property that are "used in whole or in part" for commercial

purposes. Dkt. 9-1 at 14. Plaintiff admits that he used the Main Building for commercial purposes.

Accordingly, discovery will not create coverage under the Policy. Because Plaintiff has not shown

the existence of any genuine issue of material fact that a covered loss occurred, summary judgment

for Defendant on the question of coverage is appropriate. *See Balfour Beatty Constr., L.L.C. v.*

*Liberty Mut. Fire Ins. Co.*, 968 F.3d 504, 506 (5th Cir. 2020) ("Because the insurance policy does

not provide coverage for Appellants' claim, we agree that summary judgment in Liberty's favor is

appropriate.").

## B. Extra-Contractual Claims

Turning to the extra-contractual claims, Plaintiff alleges that Defendant violated

Sections 541.060(a)(1)-(3) and (7) of the Texas Insurance Code's Unfair Settlement Practices by

(1) misrepresenting to Plaintiff "material facts relating to coverage"; (2) failing to attempt in good

faith to make a prompt, fair, and equitable settlement of the claim, even though its liability was

reasonably clear; (3) failing to provide Plaintiff a prompt and reasonable explanation of the basis in the Policy for denial of the claim; and (4) refusing to pay the claim without conducting a reasonable investigation. Plaintiff also alleges that Defendant violated the prompt payment provision of the Texas Insurance Code, § 542.058, by failing to promptly pay the claim.

Plaintiff further alleges that Defendant violated Section 17.46 of the TDTPA by (1) unreasonably delaying the investigation, adjustment, and resolution of Plaintiff's claim; (2) failing to pay for the proper repair of Plaintiff's property when liability "has become reasonably clear"; and (3) making misrepresentations about the Policy. Dkt. 4 ¶ 51. Finally, Plaintiff alleges that Defendant's breached its common law duty of good faith and fair dealing by failing to "adequately and reasonably investigate and evaluate Plaintiff's Claim, even though [Defendant] knew or should have known by the exercise of reasonable diligence that liability was reasonably clear." *Id.* ¶ 50.

### 1. Coverage-Related Claims

Because Plaintiff's breach of contract claim fails, his claims of bad faith and statutory violations based on coverage issues and the denial of his claim also fail. *See Stewart v. Metro. Lloyds Ins. Co. of Texas*, 855 F. App'x 198, 202 (5th Cir. 2021) "Because [plaintiff's] breach of contract claim fails, his allegations of bad-faith and statutory violations based on the coverage denial cannot go forward."); *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 490 (Tex. 2018) (stating that, as a general rule, there can be no claim for bad faith denial of an insured's claim for policy benefits when an insurer has promptly denied a claim that in fact is not covered).

An insured can recover actual damages caused by the insurer's bad-faith conduct, however, if the damages are separate from and differ from benefits under the contract. *Id.* at 499.

> This aspect of the independent-injury rule applies, however, only if the damages are truly independent of the insured's right to receive policy benefits. It does not apply if the insured's statutory or extra-

> contractual claims are predicated on the loss being covered under
> the insurance policy, or if the damages "flow" or "stem" from the
> denial of the claim for policy benefits. When an insured seeks to
> recover damages that "are predicated on," "flow from," or "stem
> from" policy benefits, the general rule applies and precludes
> recovery unless the policy entitles the insured to those benefits.

*Id.* at 499-500 (cleaned up). An insurer's statutory violation "does not permit the insured to recover *any* damages beyond policy benefits unless the violation causes an injury that is independent from the loss of the benefits." *Id.* at 500.[5]

Plaintiff has not identified an injury that is independent of the loss of benefits. For that reason, his remaining bad faith claims cannot succeed.

### 2. Misrepresentation claims

Next, Plaintiff alleges that Defendant misrepresented "material facts relating to coverage" under the Policy, in violation of Texas Insurance Code Section 541.060(a)(1). Dkt. 4 ¶ 43.

Section 541.060(a)(1) prohibits "misrepresenting to a claimant a material fact or policy provision relating to coverage at issue." Rule 9(b)'s heightened pleading standard extends to claims of negligent misrepresentation under the Texas Insurance Code. *See Peacock v. AARP, Inc.*, 181 F. Supp. 3d 430, 435 (S.D. Tex. 2016) ("Claims alleging violations of the Texas Insurance Code and the DTPA and those asserting fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation are subject to the requirements of Rule 9(b)."). In addition, a misrepresentation claim under the Texas Insurance Code must relate to the details of the Policy, "not the facts giving rise to a claim for coverage." *Messersmith v. Nationwide Mut. Fire Ins. Co.*, 10 F. Supp. 3d 721, 724 (N.D. Tex. 2014); *see also Aguilar v. State Farm Lloyds*, No. 4:15-CV-565-A, 2015 WL 5714654, at *3 (N.D. Tex. Sept. 28, 2015) ("[P]ost loss statements regarding

---

[5] In *Menchaca*, the Texas Supreme Court stated that a successful independent injury claim "would be rare, and we in fact have yet to encounter one." *Id.* at 500.

coverage are not misrepresentations under the Insurance Code."). To bring an actionable claim for an alleged misrepresentation by an insurer, the plaintiff must identify the specific misrepresentation the insurer made. *Ramirez v. GEICO*, 548 S.W.3d 761, 772 (Tex. App.—El Paso 2018, pet. denied); *see also Moore v. Whitney-Vaky Ins. Agency*, 966 S.W.2d 690, 692-93 (Tex. App.—San Antonio 1998, no pet.) ("In the absence of some specific misrepresentation by the insurer or agent about the insurance, a policyholder's mistaken belief about the scope or availability of coverage is not generally actionable under the DTPA" or the Insurance Code).

Plaintiff alleges that Defendant misrepresented "material facts relating to coverage" under the Policy. Dkt. 4 ¶ 43. The only specific misrepresentations Plaintiff alleges in his First Amended Complaint are the following:

> 20.   Cotham misrepresented the actual amount of damage Plaintiff's Property sustained in addition to how much it would cost to repair the damage. Cotham made these misrepresentations as a licensed Texas adjuster with the hope that Plaintiff would rely on their expertise and accept the bad faith estimate as a true representation of the damages.

> 21.   After reviewing Plaintiff's Policy, Cotham misrepresented that the damage was caused by non-covered perils. Cotham used their expertise to fabricate plausible explanations for why visible damage to Plaintiff's Property would not be covered under the policy.

> 22.   As stated above, Safeco and Cotham improperly and unreasonably adjusted Plaintiff's Claim. Without limitation, Safeco and Cotham misrepresented the cause of, scope of, and cost to repair damages to Plaintiff's Property, as well as the amount of insurance coverage for Plaintiff's Claim or loss under the Policy.

*Id.* ¶¶ 21-22. Such allegations do not "point to any untrue statement made by [Defendant] regarding the policy or any statement about the policy that misled him." *Texas Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 446 (Tex. 2012). The misrepresentation must be about the details of a policy, not the

facts giving rise to a claim for coverage. *Messersmith v. Nationwide Mut. Fire Ins. Co.*, 10 F. Supp. 3d 721, 724 (N.D. Tex. 2014). Thus, to be actionable under § 541.060(a)(1), Defendant would have had to represent that Plaintiff "would receive a particular kind of policy that it did not receive" or "denied coverage against loss under specific circumstances that it previously had represented would be covered." *Id.* (quoting *U.S. Fire Ins. Co. v. Confederate Air Force*, 16 F.3d 88, 91 (5th Cir. 1994)).

The misrepresentations Plaintiff alleges are about the facts that gave rise to the policy claim, which is not the "type of misrepresentation that § 541.060(a)(1) protects against." *Id.* (concluding that plaintiffs failed to state a claim for relief under § 541.060(a)(1) where the alleged misrepresentations concerned that hail damage to property was cosmetic and not protected); *see also SJ Auto Brokers, Inc. v. Union Ins. Co.*, No. MO:19-CV-00016-DC, 2019 WL 10369658, at *3 (W.D. Tex. July 24, 2019) (dismissing misrepresentation claim under §541.060(a)(1) where alleged misrepresentation was "about the facts that gave rise to the policy claim"); *Z&W Enters., LLC v. Great Lakes Reinsurance (U.K.), PLC*, No. 7:16-CV-319, 2016 WL 11021003, at *5 (S.D. Tex. Aug. 12, 2016) (finding that misrepresentations relating to inspection of property, extent of damages, and insurance coverage under policy and its application to plaintiff's claim were not covered under § 541.060(a)(1)). Accordingly, Plaintiff's misrepresentation claims also fail.

## IV.    Recommendation

For these reasons, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Safeco Insurance Company of Indiana's Motions for Summary Judgment (Dkt. 5) and **DISMISS** Plaintiff's lawsuit.

It is **FURTHER ORDERED** that the Clerk remove this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Lee Yeakel.

### V.   Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on December 19, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE